Good morning. Michael Rubin for the plaintiffs. I'd like to reserve three minutes for rebuttal, please. The California legislature enacted Labor Code Section 2810.3 in 1915 In order to help ensure the legally required payment of all wages due to persons employed by labor contractors, which the legislature recognized are often, like Serenity Transportation, undercapitalized, and which often compete for business by cutting their labor costs to the bone and therefore have historically often been found to have committed labor code violations. The legislature sought to accomplish this wage protection purpose by making the client employers, the companies like SCICAL in this case, that hire the labor contractors, by making them jointly and severally liable for all wages without requiring the employees to prove that the client employer controlled them or without having to prove any of the other traditional elements of joint employer liability under California law. And the easy case is one in which the workers actually do the work and then the liability flows to both. Correct. This is a hard case because you're seeking compensation for the liability for the waiting time when the waiting time was shared with a lot of other companies. So help us out. Sure. Perhaps it's a hard case factually on the merits, but this is a Rule 23-F appeal, and it's not a hard case as to the appropriateness of certification because whether— So you're saying that the legal question should be saved for later rather than answered now because the district court said we're not certifying because it's obvious that there's no liability as to that part of your claim. That's right, and that was plain error under many cases decided by this court and other courts because that was a decision on the merits. What should have happened here— No, wait a minute. You mean the district court is incapable of denying certification even if it concludes that you have no right on the merits? No. The district court under cases like Stockwell and others is not supposed to decide the merits unless it's necessary to determine whether under plaintiff's theory of liability— I'm not sure that's absolutely right. I understand that it's customary to save the merits question for later, but is it impermissible for the district court when it concludes that the claim is a dead-bang loser on the merits to say, well, I'm not going to certify for a claim that we think is a dead-bang loser? No, Your Honor. That is not impermissible. Right. So the question is—and whether you phrase it in terms of dead-bang loser or not a viable claim, which is the way Magistrate Judge Corley stated it—or the question is, is there a plausible basis on the merits for plaintiff's theory? Is there a construction in this case of 2810.3 that a reasonable juror could conclude permits the liability to apply to the client employer? But why is that a question for a juror and not a legal question? I mean, it seems like it's about an interpretation of this statute. Sorry, I said jurist. Oh. So I completely agree with you. It is a legal question, and if a reasonable jurist could conclude as a matter of law that 2810.3 applies, as its plain text seems to indicate and as the purposes of the legislature, we believe, indicate, would apply in the situation to make the client employer jointly and severally liable, then that's just a common question for ultimate determination in the case. Now, you are right that if there were no possible construction of 2810.3, then a court needn't go through the meaningless exercise of certifying a case only to resolve it later, although the proper way to proceed is exactly the way Judge Hillman proceeded in his Vargas case, which is well known out here because it's the predecessor to the ABC analysis. In that case, as you recall, the employer first filed a summary judgment motion to determine whether there's F-quad A preemption of prong two under the Massachusetts Wage Act, and then only after Judge Hillman decided that legal issue did the class certification issue come up and the judge certified the remaining issues. In this case, SCICAL filed three summary judgment motions before the class certification issues were decided, including one in which it sought to establish that it wasn't a client employer at all, didn't even raise this issue, didn't raise this construction of 2810.3 until the briefing on class certification. So procedurally, this case came about in sort of a backwards way. But regardless of the procedure, regardless of what should have happened, which is that SCICAL should have timely raised this as a summary judgment motion, the question before you now is, is there a construction of 2810.3 that would permit it to be held jointly and separately liable for this on-call waiting time? And I have many reasons why that is true. And just as a hypothetical, if we were to conclude that there's no liability under this statute for the waiting time, are you saying that we're not supposed to give you that conclusion? We're supposed to send it back to the district court anyway? Even though maybe it's a hard question, but we decide as a matter of law that you lose on this point. We're not supposed to say that? All I can say in response to that question is in Stockwell, this court said that you have no jurisdiction under 23F to issue merits rulings. Whether that decision is right or wrong on that point, that seems to be the position of the Ninth Circuit. But as a practical matter, 23F gives this court jurisdiction to review summary class certification orders. And I'm not sure what the results should be. I can only tell you what seems to be required by existing Ninth Circuit precedent, which is that you don't have jurisdiction to decide the merits of a case on a 23F appeal. But you don't have to reach that here because all time worked for a labor contractor is compensable under 2810.3 against the client employer. It's just as if you think on-call is not working, then you don't. Then there's no liability against anyone. But, Judge, let's start with the on-call waiting time. Although the principle would apply to any shared activities, we gave the example of an accident with multiple deaths where the person is dispatched to go to various funeral homes. But let's talk about on-call waiting time because that, I think, is what really troubled Judge Corley. The judge appropriately certified the on-call waiting time against Serenity. The removal technicians were on duty. The evidence in the record is very clear, starting with the declarations at ER 1193, that as soon as these folks get a call, whether they're asleep, whether they're having dinner with their family, within five minutes they have to be out getting ready. Their cars have to be oiled and gassed. I understand perfectly what you're saying with respect to Serenity. These people are on-call for Serenity. But CSI is only one of many clients. And I think the record tells us that in 2016 they were responsible for only 15% of the business, yet you want to hold them responsible for the entirety of the amount. Fine. Let's break it down into two pieces. First of all, I think we would agree that if it were a one-on-one situation, if waiting time is potentially compensable, which it is under California law, under Marillion and other cases, if it were just a one-on-one situation, there should be little question the 2810.3 applies. So then the question is, what happens in any circumstance when you have compensable time, whether it's waiting time or whether it's dispatch time? That's why this is a hard case. That's right. That's why it's a hard case on the merits. But the answer to that common question is going to drive the resolution of the case. For Rule 23 purposes, however, either the court as a matter of law or the jurors, as a matter of fact, determine liability for that time is going to apply across the board to every class member. We may lose at trial. We may win. But the question now – I predict on that question you're going to lose because the district court has already told you that you lose on that question. Except – You may be able to appeal it to us later instead of now, but the district court has already told you her view of the answer. But this is what you can and I believe you should do. If there is a plausible theory by which SCI Cal would be liable on the merits, which there is for the reasons we explained in the briefs, then she erred. She should not have decided that merits question on class certification. For you to reverse her opinion, you have to state that, yes, in fact, despite her conclusion, she jumped the gun and reached a legal conclusion where there was a basis for concluding otherwise. In explaining why our legal theory is plausible, you will necessarily require the district judge to take a second look at the issues. Yes, she may conclude again on remand if there were still another opportunity for SCI Cal to file a summary judgment motion despite the deadline for dispositive motions having passed that, no, there's no liability here, but you are going to be telling her that if you look at the plain language and the legislative purposes, in fact, the way joint and several liability works is almost always the case when you have multiple joint employers where the goal of the statute is to protect the wages of the employee. That was the focus of the legislature. There will be lots of entities in joint and employer, sorry, in joint and several liability cases that are jointly and severally liable. There's no double payment. The worker gets paid those wages once. Minimum wage is owed. Minimum wage is paid. It is then up to all of the jointly and severally liable entities to work it out among themselves how liability should be allocated. If Serenity has- So if I know you don't want to lose on the on-call time, but say you lose on the on-call time and we agree the statute doesn't cover it for SCI, can you just speak a little bit about how the break issues, the meal breaks and rest breaks and overtime issues are supposed to work, like, because for this issue of multiple contributions, I mean, do you need- If the SCI was responsible for a 45-minute job on a day that there was ultimately overtime, are they liable for all of the overtime, some of the overtime? How does it work? No, no. If the court were to say that the statute does not make SCI-Cal liable for any time that was worked for more than one client whether it was worked for the labor contractor, like the multiple accident scene, and the only time that SCI-Cal could possibly be liable for were dispatches for SCI-Cal, then you would look at that dispatch time, which is clearly laid out in the logs and the call sheets, so you can calculate worker by worker to determine whether there was enough time spent on dispatches on a given day- But do you need more than- For SCI to be liable, do you need more than eight hours a day of rides for SCI, or do you just need more than eight hours of rides, one ride of which was for SCI? If you assume that the only time the legislature intended any liability at all was for an actual dispatch, then it would only be the time on dispatch for SCI, and SCI's liability in this case would be minimal. And that's because you would need more than eight hours to trigger an overtime, eight hours driving for SCI. Yes, the reason that workers have overtime claims against serenity in meal and break claims and the other claims is because if you stack all of the dispatch calls for multiple employers over the course of the day, they add up to more than eight hours, they trigger the right to meal and rest breaks. But if you were to eliminate all of the on-call time, and on-call time is on-duty time where they are working under California law and they are performing a job that is- they are there for the benefit of others. It may be that the jury ultimately concludes that that is not compensable time. That was the issue in Ridgeway that the court just decided two days ago. The jury there decided that the Walmart driver's layover time was compensable because there was sufficient control. That's absolutely a factual question. But if the jury concludes that serenity is liable for the on-call, on-duty time waiting to be dispatched, then the next question is the legal question. And that's when it should be decided, under those circumstances, having found on a class-wide basis, because it's a common question, that serenity transportation is liable for that waiting time, that waiting for dispatch time. Then, as a matter of law, if serenity can't pay, given the fact that it is so willfully undercapitalized, do SCICAL and any other client employer that plaintiffs have chosen to sue, although in this case SCICAL is the only one, are they jointly and severally liable? Now, SCICAL has all the options in the world and could have prevented this and has a way of laying off its obligation. But the point of this statute is that client employers like SCICAL aren't supposed to work with labor contractors that can't comply with a law, that don't comply with a law, and aren't in a position to pay the wages. That's why 2810.3 was enacted, and that's why, despite the ---- You're over time, so let me interrupt you, but then save the three minutes that you wanted to save. I sure will. Thanks so much. Good morning. If it pleases the Court, my name is Steve Gurney. I represent SCICAL, and we decided between ourselves and Serenity's counsel that we're going to split our time 12 minutes to us and three minutes to SCICAL. Let's do it this way. Could you put 12 minutes on the clock so that you can see it right there in front of you? That would be terrific. Thank you. The fundamental issue here deals strictly with the question, should a client employer such as SCICAL that hires an independent contractor be responsible for work that was not performed for SCICAL, for time that was spent not working for SCICAL, that was sitting on the sidelines waiting to be dispatched to somebody else? Your questions have already raised that issue, and the fundamental question, the gist of the claim here is this on-call time, because without the on-call time, they have nothing, and they have strictly individual issues against SCICAL. Now, SCICAL, as was noted, has less than 15 percent of the business of this Serenity. 2016, I don't know of the other years. Well, it doesn't even work for them. It has zero now because they stopped using them. I know of them, too. Yeah, they stopped using them as a result of all this going on. So, sorry, I'm just a little bit disoriented. You're the counsel for Serenity? No, I'm the counsel for SCICAL. That makes more sense because that's what it sounds like you're doing. I'm sorry. Okay. I'm sorry. Maybe I wasn't clear about it. But, yeah, we are talking about the fact that Serenity is the employer of or is alleged employer that's a misclassification case here. After all, fundamentally, that's what the case is about, and that's why Serenity was sued. There is no common issue of misclassification as to SCICAL because SCICAL didn't classify anybody. Rather, the issue is whether it can be held liable under 2810.3 for time that was spent by employees of Serenity waiting to be dispatched to one of their 80-plus different customers. Right. And there's no dispute that under the statute you're liable for the work that's actually performed for SCI? No dispute. Got it. No dispute. So you're disputing only your liability with respect to the wait time. Exactly. And so the on-call time clearly is not. And just Corley, I think, found she dealt with the issues and the language of the statute from the standpoint of making a legal interpretation, not a decision on the merits. So why didn't you move for summary judgment on that question instead of raising this at the class certification? Well, it was a matter of timing, Your Honor, in terms of the summary judgment time. How many motions for summary judgment did your client make? Well, we filed a motion to – there were a couple of different issues. My client and its parent company, SCI, Service Corporation International, were sued. Service Corporation International had nothing to do with this, of course, and their claim was that they were a joint employer. So we filed a motion for summary judgment on that issue. That's one. We filed a motion for summary judgment on the grounds that the statute didn't apply on the grounds that our client wasn't a client employer by definition under the definition of the statute, dealing primarily with the issue of premises, on the premises or not on the premises. Let me cut this short just a little bit because time runs. Sure. But I'm trying to pick up the point made by Mr. Rubin that it's an odd thing when you really have a genuine issue of law to make this part of your class certification issue rather than getting that out of the way in the first instance. I got that, Your Honor. But it was because of the way the case was scheduled and when we were supposed to be making motions and so forth, and they filed their motion for certification before we could do that motion. That's all. And so we raised the issue. The issue is clearly going to have to be decided at some point, and it is clearly a question of law, not a question of merits. How much briefing was there in the district court on this particular issue, that is to say your liability under the statute for wait time? Lots of briefing on that. If you look at the record, there was a lot of briefing on that issue. This is class cert and then reconsideration, right, all about this? Sure. Sure. Because if in fact there's no liability. So the issue just sneaked up on the district court and it had to be decided sort of on the fly. I don't think it snuck up on her at all. She knew, believe me, we had lots of discussions about this, but she knew this was a central issue in the case and a central issue from their standpoint. That is, if my client's not liable for all the on-call time that these workers spent waiting to be called to somebody else, then the case has very little value and there's very little exposure because, after all, our client only provided 15% of their business. But could I ask you about the other claims? So my understanding is that some of these jobs took four hours, four and a half hours. So wouldn't you be liable for a rest-break claim on a four-hour ride? Potentially. Potentially. But that requires a really tight individual analysis. I know that it's part of it. So why is it so hard? I mean, if they have records of the length of rides, why can't there just be a look to see whether anyone did rides over three and a half hours? Well, in an isolated case for one of the plaintiffs, that might be true. That was a rarity, by the way. The average time was less than two hours per break. So the question is, okay, here, let me pose a hypothetical to you. Let's assume then, and I think this is in keeping with a question that was previously asked, let's assume that my client hired Serenity to do one removal on one day, and it took two hours. Let's assume that. But that same employee did four removals for somebody else that also took two hours each. So we have 10 hours. Is my client responsible for the overtime, wage, and as well as the meal and rest period responsibilities for all those other four clients? It sounds like Mr. Rubin was saying not, you're not, if they lose on the on-call time question. That's right. But it seems like I don't quite understand how that gets you out entirely, which I think right now you're out entirely. Right? No, we're not out. This was a decision not to certify the class, and the reason was not to certify the subclass, that is, is because there were individuals predominating. That is, how do you determine? Mr. Rubin, I'm not sure I understand why the individual issues predominate on overtime and rest breaks and meal breaks if there were rides just for SCI that add up to enough. All right, well, because the records, despite the claim here, the records of Serenity do not indicate sufficient information for that to answer those questions on an individual basis. The records show the time a call came in to Serenity from a referring mortuary. That went into their dispatch office. Then it was dispatched out to one of the drivers. The driver's records, they kept a record called a call log. They also kept a record called an invoice. The driver's records have a call log that indicates a time on it. In some cases, that time was reflected as the time they got the call from the dispatch. In other cases, it was the time that they actually arrived at the scene where they're going to make the pickup. We don't know when a driver, if a driver gets a call at 10 o'clock in the morning, what time is my client responsible for? Are they responsible from the time the dispatch call comes to the driver or from the time the driver gets dressed, has breakfast, and gets on the road? Why isn't that a common issue that the district court could decide as a common matter and then they calculate it from the records? Well, because it can't be calculated from the records because the records are incomplete and they're inaccurate because the way that the drivers were recording the information was not consistent. So the fact of the matter is that those records would require an intense analysis. It also would require, well, if somebody gets a call at 8 o'clock in the morning and they're dispatched to go to a town 30 miles away, and on the way they stop and they have breakfast, is that time that my client's responsible for? No. That requires an analysis. Did you have a meal? Did you take a rest break? Did you do this and that on each one of their missions? So Judge Corley focused on that. She said, look, you're only responsible, SCICAL, for work actually performed, for work that you do, which you could argue under the terms of the statute that it's only the time that they actually spent on our premises because that's what the statute says. But Judge Corley said, no, it's probably the time that they're actually working for you. And you don't think that includes getting to your premises? Well, no. She has concluded that that's the case. I think that's maybe a fair analysis. The statute has lots of issues, as we raise some constitutional vagueness issues as well, as you know. I think it was 75 minutes. So as I understood it, a driver had 75 minutes between the meeting. Yeah. Serenity's rule said you have to respond, respond. That is, say, I'm going to take the call or I'm not going to take the call, and get there theoretically within 75 minutes. Was that in SCI's contract with Serenity, that within that long the driver would be there? Yes. It was the same as Serenity's own contract with its drivers. So then why shouldn't those minutes be part of the job? From the time they're dispatched to the time they actually get going? No. From the time they get in their car and start driving to the work site, to the place where they're going to make a pickup, that might be legitimate time. But when did they get in the car? When they got the call at 8 o'clock in the morning, did they get in the car at 830 and drive and get there in time? Or did they wait an hour to get there? In fact, the records will show that in some cases they waited two hours to get there. They were late. So those analyses have to be done on an individual basis. That's what Judge Corley found. And that's why she refused to certify the 75. But was her decision that they needed to be individualized because she agreed with you that the time didn't really start until sometime during the 75 minutes? I mean, if we disagree about that, then maybe we say the whole 75 minutes counts, and then we can take it from the time that the call arrived in the first place. Well, we don't hire people on 75-minute increments. All we told Serenity was we need somebody to respond within a time. We want somebody. You decide who, and you can go whenever you like. We can pick the person to go. It's not up to us to do so. But we want somebody to respond. We have a deceased person there. Our family is there. They need somebody to respond. So that time is not included. It's the time that they actually work for us. They actually go out and do something for us. How many punitive class members are there, please? Well, interestingly, in the subclass, Your Honor, you're referring to, the potential subclass, in the FSLA class subclass, there's an FSLA class or group of folks, I think it's 16. In the class as a whole, that is if you buy the idea that we're responsible for all of the drivers and all of their on-call time, as plaintiffs contend, there's 85 drivers. I think it's 85 is the number. It's not a huge class. But the subclass, and, of course, you've got to winnow that down to of those 85 drivers who worked there during the time that this statute was in effect, which started January 1, 2015. And that's a smaller number. I think the number is actually about 34 or 38. Was numerosity ever an issue? I'm sorry? Was numerosity ever an issue? I think that's an issue, sure. That's a different answer from the question he asked. It is an issue. Was it raised in the district court? Yes, it was. We put all these statistics in front of the court. But did you argue this class can't be certified because of numerosity? You know, did I make an oral argument? Did I make a big argument about that? No, probably not. Was it a section in the brief? I think it's in the briefing and the materials that were supplied that numerosity is a problem because of the few people that are involved. Was it the heart of the argument? No. The heart of the argument was the individual analysis that's required. Your time has almost run. There was a suggestion of possibility of certification of the California Supreme Court. How serious is that suggestion? We did ask that this statute has lots of issues, in our view, and lots of issues of vagueness and uncertainty. And it's a first impression case. In the California Supreme Court, no California court's ruled on it. So we did ask that it be certified for their determination as to a lot of the terms, like at any given time, site, worksite, and premises, work performed. All those terms are vague in this statute. So that's why we did that. Okay. Thank you very much, Your Honor. Three minutes for the other attorney.  Go ahead, Your Honor. May it please the Court. Good morning. I'm Jeff Hubbins, and I represent Serenity and David Ferdell. I think as far as the appeal goes, it doesn't involve David Ferdell or Serenity. The plaintiff's certification was entirely granted as to those two defendants. So to that extent, I think that my appearance is almost unnecessary, and I'm uncertain whether there are any questions about my involvement in that appeal. I have very little information about 2810.3, but wanted to make a couple of points in that regard. There was an agreement between the parties to proceed in the fashion that we have with regard to some summary judgments at the outset of the case to clarify a few defendants' involvement, mainly the County of Santa Clara and the joint employment issues, because we thought that that would clear up a lot of stuff. So that's why we had some summary judgments in the beginning. We talked about summary judgments in the middle before certification, and then we decided to do certification and then have summary judgments after that. So there are summary judgments pending on these issues as well. They did get involved into the certification. As it applies to Serenity again, 2810.3 doesn't involve us. Serenity transports deceased people from one place to another. They have roughly 80 to 90 clients. They perform a portion of work for SCI, but it's a very small portion of work. I would estimate 15%. There's some factual dispute about whether it's a majority or a minority or 10% or 6%, and I think that depends on how you calculate the numbers.  The driver has five minutes to accept or decline a transport. So they can decline a transport altogether and have no implication. Serenity drivers, after they accept a transport, then have the obligation to get to the location of the decedent within 75 minutes. In some clients, it was a little bit less time because of an emergency situation, say somebody's deceased on the freeway. And what is your understanding of the records that exist? Do we know the time at which a driver accepted the job? In some circumstances. There was no continuity or consistency with regard to the records. But, like, from Serenity's side, so you said you call someone, but if they say no, then you need to call someone else. Is there any record on Serenity's part of when someone accepted and when it started? It's inconsistent, Your Honor. Serenity, so the drivers hypothetically accept a call. Some drivers, and there wasn't a consistent policy on this, if that's what you're asking regarding Serenity. Some drivers recorded that they took a call, right, they accepted it, and then they have their arrival time. Every driver reported their arrival on scene, right? But not everyone wrote down when they got the call or when they accepted the call. Correct. And you did not compensate from the time they accepted the call? Can I clarify that before, Your Honor? I don't think anybody recorded when they accepted the call. I think that they recorded when they left from their house, if that makes sense. I see. And at what point do you begin to compensate, when they leave the house? It's a piece rate compensation, Your Honor, so they get paid $52 or $55 per delivery. I see, irrespective of how long it took them. Yes. But they get more if it's a longer distance? Yes. Generally speaking, they got $52.50 per delivery. And if they did different deliveries, say, across the state or to an airport or for a corner, the rates varied somewhat based upon the, I guess you could say, the time or the expected time that it would take, correct? Okay. Got it. Okay. Thank you. Thank you. To the extent. Never mind. Thank you. Now, Mr. Rubin, you sought to reserve three minutes, so three minutes on the clock. Thank you. I appreciate it. First of all, factually, while it's true they didn't pay based on the amount of time, the driver call logs, an example is at ER 220, the second column time is the time they take the call. Further, the declarations, in particular those starting at 1193, show that they had to respond within five minutes. They were called often by Mr. Friedel himself if they didn't respond or if they didn't take the call. And Mr. Friedel's email to all class members is at 891 to 92 saying, you have to be there within 60 to 75 minutes. Don't delay. Have your car gassed and ready to go. Have the suit ready. You should get there as soon as possible, even though the client doesn't need you to be there within 75 minutes. And so because those records exist, your position is that even if you lose on the on-call time, there should be a class as to the rest breaks and meal breaks and overtime. And overtime, sure, on the dispatch time. But the important question here is whether to, if the court is inclined to decide the merits of the scope of 2810.3, whether to certify what everyone, including Judge Corley, said was a case to first impression. I want to point out the legislative history that Judge Corley herself cited indicated the legislature's concern with six industries in particular. Two of them, agriculture and garment, are industries where it is commonplace for there to be multiple client employers and often undifferentiated work. It's often impossible to tell. Think about a garment or commercial laundry, which is another one. And look, this is California. Look at the Amaral versus Cintas case. It's easier to understand how an employer who, the worker is on site the whole day and didn't get breaks and had overtime. I mean, it's just easier to understand than this on-call thing where no one really knows who's responsible. From the start, I acknowledge that the merits in this case and the factual determination may not be easy, but this is a class certification question. And the extent to which 2810.3 applies in one of these instances where there are multiple employers and the work is undifferentiated and because of the undercapitalization, the workers are concerned they're not going to be paid for what we contend is compensable time. And you have to assume for these purposes that we're right because the jury could find that it's compensable time. In terms of thinking about whether to certify, though, do we have any idea how common this kind of shared on-call time situation is? Like, would we be certifying just to get an answer in this case only or is this a common thing? It's common in the garment industry and the agricultural industry. In fact, Sierra Leone and CELA in their amicus brief pointed out examples in the agricultural circumstance where it is common. Certainly in the industrial laundry case, and I was citing the Amaral v. Sintas and Aguiar v. Sintas in the California courts of appeal where cities under a living wage ordinance sent laundry in and the workers had no idea which clients' laundry they were working on and the court found the California court applying California law joint and several liability because there was sufficient control there. Those laundry workers have to be on-call like 24 hours a day? I mean, I'm not sure it's the same on-call. Two different issues. Whether on-call time is compensable is a separate merits issue, also a class-wide issue. We have to assume for purposes of a class certification motion it's compensable, that serenity is liable because they're on duty. They're on duty five days a week, 24 hours a day. They can get that call at any time and have to respond within five minutes. If that time is compensable, which is a jury question, then certainly serenity has to pay for the overtime and the meal breaks and all that, but if serenity doesn't have the money to pay, the question then is, are the purposes of 28.3 and the text, which simply says the worker has to be supplied to, doesn't say controlled by, doesn't say working for, if the worker whose wages were denied is a worker who was supplied to someone and there's no temporal limitation in 28.10.3, is that company liable? That's a common question. It's a hard question, perhaps. My understanding is that there are regulations in progress to interpret this. That's exactly right. And does that affect whether we should certify now? I mean, should we wait to see what those regulations say, because it's going to change the legal landscape? Sure. It certainly would indicate that rather than certifying, you should reverse and remand with an order requiring class certification because presumably those regulations will be final or will be withdrawn by the time this case goes to trial and we'll have guidance from the DLSC, which is trying to put some meat on the bones of 28.10.3. But the California Supreme Court obviously doesn't need to wait for those regulations if they are ultimately going to be promulgated, and we don't know because it was back in June that they were first proposed and nothing has happened about them since then. But what we know is these are difficult issues. They're unresolved issues. It's complicated because there's this gut feeling that on-call time isn't really work time, but under California law, it is if there's sufficient control by serenity. And those, because they are common questions, and the resolution will affect all, and numerosity was conceded, and she found numerosity. In fact, there are 60 people rather than a smaller number. But because that resolution will affect everyone in the same way, this is an appropriate case for certification. The court jumped the gun by deciding a merits issue. Two of the summary judgment motions were filed before the class certification motion. There's no reason why the employer couldn't have sought summary judgment on this. It didn't, but merits don't get decided on class certification. Thank you. Okay. Thank both sides for their arguments. Johnson versus Serenity Transportation now submitted.
judges: W. Fletcher, Friedland, Hillman